THE CITY OF EL RENO v. EL RENO WATER COMPANY, *a Corporation.*

(Filed March 4, 1904.)

1. ADDITIONAL PARTIES—Necessary, When. Where a town or village enters into a contract with M. and his assigns to construct a system of waterworks, and grants a franchise for that purpose, and the ordinance granting the franchise contains a provision that M. or his assigns may borrow money to aid in the construction of the same, and may secure such loan by mortgage or trust deed upon the waterworks system, and that the city shall retain from the hydrant rentals a sufficient amount to pay the interest on such indebtedness, in a suit by the city to cancel the contract and annul the franchise, the mortgagees' rights are affected, and the mortgagees are necessary parties to the action; and a full determination of the controversy cannot be had without the presence of the mortgagees.

2. FRANCHISE CONTRACT—Before Annulling, City Must Show, What. Before a municipal corporation can have a contract annulled which was made with another to construct and maintain a

system of waterworks, the plaintiff must clearly show that the defendant has failed to perform the conditions of its contract.

3. **EXPECTED CONTINGENCY—No Failure to Perform Contract, When.** Where a franchise ordinance contains a provision that in the event of a failure to furnish an adequate supply of water, when such failure is caused by a failure of the supply of sheet water, the water company shall not be held accountable therefor, Held, That a finding of fact by the court that the failure of the water supply was largely caused by the inadequate quantity of sheet water, that being the original source of supply, which was caused by continued dry weather, does not show that the defendant has failed to perform the conditions of its contract.

(Syllabus by the Court.)

*Error from the District Court of Canadian County; before C. F. Irwin, Trial Judge.*

*W. L. Baxter, R. B. Forrest* and *Joseph G. Lowe,* for plaintiff in error.

*C. O. Blake, E. E. Blake, W. T. Beeks, W. H. Criley, R. E. Campbell, D. R. Low* and *John Livingston,* for defendant in error.

Opinion of the court by

PANCOAST, J.: This was an action commenced in the district court of Canadian county, by the city of El Reno against the El Reno Water Company, the object of which was to cancel and annul the contract theretofore entered into, granting to ·A. H. McCormick, his associates and assigns the privilege to construct, maintain and operate a system of water works within the corporate limits of the city of El Reno for a period of twenty years. The petition contains all of the formal allegations usual and necessary in such cases, together with a copy of the franchise ordinance, and then alleges that the defendant, who is

the assignee of A. H. McCormick, failed to furnish the plaintiff and its inhabitants an adequate supply of good, clear, bright and wholesome water as agreed upon by its contract; that the water which was furnished was dark, unwholesome, unpleasant to taste, and offensive to smell, and was unfit for drinking, and unfit for household use, and its use endangered the health of the inhabitants of the city; that the supply of water was at all times, for more than ninety days, wholly insufficient and inadequate for sprinkling lawns, or other domestic purposes, and it was wholly inadequate to protect the city and its inhabitants from fire, so that the health and property of the citizens of the city was greatly endangered.

The petition also contains a copy of the resolution passed by the mayor and council of the city in regular session, directing the city attorney to proceed and commence an action to annul the franchise. Section two of the franchise ordinance, which was the contract between the parties, had the following provision in reference to the supply of water to be furnished:

"Section 2. The said grantees shall at all times furnish an abundant supply of water, which shall be clear, bright and wholesome."

Section fifteen of the franchise ordinance is as follows:

"If at any time the supply of water for either public or private use shall prove insufficient from any cause whatever, except through the fault of the town, the rental of the fire hydrants as well as the rate to private consumers shall cease during the time of such suspension of said water supply, and if at any time after the water works are completed and accepted as herein provided, said grantees or their assigns shall fail to, except through unavoidable accident,

or fault of the town, or failure of the water supply, furnish an adequate supply of water for fire and other public and private use, as provided in this ordinance, for a period of sixty days (60 days) continuously, then the contract for hydrant rental between the town of El Reno and said grantees shall cease at the option of the town."

It will be necessary to notice section six of the franchise ordinance in passing on the rulings of the court below. It is as follows:

"Section six. If said grantees shall issue bonds secured by mortgage or trust deed upon said works and appurtenances, then the money due or to become due for any hydrant rental as aforesaid, or so much thereof as may be necessary, is hereby appropriated to the payment of the interest on such bonds. And the town hereby agrees that its treasurer shall deposit the same at the place where such interest is payable, due notice of the place of payment of said interest to be filed with the town clerk by the grantees, to be applied to such payment. The town agrees to pay interest at the rate of ten per cent per annum on all sums of money due from it, under the provisions of this ordinance, if not paid or deposited at maturity as aforesaid."

The answer of the defendant contains the following admission:

"And for a second and further defense said defendant refers to the admissions hereinbefore made and makes the same a part of this defense, the same as if fully rewritten herein. and further admits that during parts of the month of June, July and August, 1901, it did not furnish to the city of El Reno an abundant supply of water as provided by section two of the ordinance marked "Exhibit A," attached to the petition, but alleges that during all of said months, except a portion of one day when a part of its machinery was broken and disabled, it furnished an ample supply of water for domestic and sanitary purposes and ordinary fire

protection, and its failure to furnish water more abundantly was caused by failure of supply, as more fully hereinafter explained and shown."

"Said defendant alleges that its wells and pumping station from which it has, until within the last few months, obtained its entire supply of water, are located about equally distant between the north line of the city of El Reno and the North Canadian River. That prior to locating its wells and pumping station at this point, it made careful investigation, and from the best information obtainable, believed that an ample supply of water would be found in the sheet water or underflow that extended across the river bottom at this place and for many miles up and down the river. That at the time of the passage of the original ordinance and making of the contract between McCormick and the plaintiff's predecessors, it was well known and understood by the city and the people in general that the defendant would get its water supply at the place described, and all parties concurred in the belief that a sufficient supply of water could be found at that location. And defendant alleges that the supply of water from the sheet water or underflow at its pumping station proved ample and adequate for several years after the works were constructed, but owing to the growth of the city of El Reno and large increase in the consumption of water, the supply had gradually become inadequate. That still hoping to increase the supply of water, the defendant has at a great expense, from time to time penetrated and tunneled the water stratum near its pumping station, and has increased the number of its wells, all without materially increasing the supply of water. That the summer just passed, (1901), has been unusually dry, both in the vicinity of El Reno and west along the valley of the North Canadian River, so that the river has been entirely without water for many miles, and the underflow greatly diminished, causing wells that have for years heretofore been furnishing

a large supply of water, to fail entirely, or diminish greatly the yield or flow of water therefrom.".

The answer then shows that during a part of the year 1901 the city of El Reno had a transient population of over one hundred and seventy-five thousand, a portion of whom used water from the city water works. The answer then has the following:

"And said defendant alleges that the experience of the past summer has demonstrated that the supply of water to be had at its pumping station as now located, will not, at all times prove adequate to the necessities and requirements of the city of El Reno; that in the month of June last it purchased additional pumping machinery and sunk several wells in the bed of the North Canadian River, and as soon as it was possible with the material it had or could secure at the time, about July 10, 1901, conducted the water pumped from the wells at the river to the pumping station where it became a part of the supply. That the wells sunk by it at the river as aforesaid, have demonstrated that the flow of sheet water, or underflow, is much stronger near the river, and that an ample and abundant supply can be secured there, by moving the present pumping station and laying a new force main direct from there to the city mains. That it would at once proceed to do this but for the pendency of this suit, which so affects its credit that it is unable to borrow the large sum of money required to make the change and improvement mentioned. That the water works have cost upward of seventy-five thousand dollars, of which fifty thousand was borrowed, mortgage bonds being issued therefor, and the residue contributed by the stockholders of the defendant company."

After the answer was filed, the plaintiff in error filed a motion for judgment on the pleadings, on the ground that the issues raised in the petition were confessed and admitted

by the answer, and that there was no triable issue between the plaintiff and defendant made by its answer. This motion was by the court overruled, and exceptions duly saved.

Following this, and by agreement of the parties, the Hon. Geo. S. Green was appointed referee to try the cause, and was required to submit his findings of fact and conclusions of law at the next or following term. The referee made his report, which contained twenty-five separate findings of fact and four separate conclusions of law based thereon. The only findings of fact which are deemed necessary to be noticed here are Nos. nine, ten, eleven, twelve, thirteen, fourteen, fifteen, sixteen, seventeen, eighteen, nineteen, twenty and twenty-one, which are as follows:

### IX.

"That the water furnished by the defendant during the year 1901, from May 1st and from that time until September, 1901, the date of the commencement of this action, was not at all times clear, bright and wholesome, but upon the contrary was sometimes clouded, discolored and charged with an unpleasant smell and odor, and was not at all times wholesome."

### X.

"That to correct and improve the condition of the water the defendant, in June, 1901, caused the standpipe of its said works to be cleaned, shut off its reservoir, and attempted to furnish water from wells then completed, and in process of development."

### XI.

"That the defendant admits in its answer in this case that it has not complied with or conformed to all the provisions of the contract, but says that it will, if allowed by this court to further mortgage its plant, in the future comply with the conditions of its contract."

## XII.

"The supply of water from about May 1st, 1901, to September, 1901, was inadequate for the fire purposes, and insufficient for the domestic purposes, in this: That there was not furnished a water supply sufficient for lawn purposes on and at times for house use. That there was not a sufficient pressure for domestic purposes upon the second floor of buildings during portions of said period."

## XIII.

"There has been prior to the commencement of this action a partial failure on the part of the defendant to comply with the conditions of the contract between it and the plaintiff, and the plaintiff had given to defendant due and proper notice."

## XIV.

"The defendant was apprised of and had knowledge prior to the commencement of this action that it was not fully complying with the conditions of its contract, and was violating its provisions and this notice was given it more than sixty days before this action was commenced.

## XV.

"The defendant in its answer admits that it has failed to fully perform the conditions of the contract during the months of June, July, August and up to September 15th, 1901, and asks no hydrant rental from June 15th to September 15th, 1901."

## XVI.

"Under the provisions of the 15th section of the contract, plaintiff rescinded the contract between it and the defendant, so far as it was capable of doing, on July 1, 1901."

## XVII.

"The defendant was duly notified in proper time of the insufficiency of the supply of its water plant."

## XVIII.

"That the water plant of the defendant company cost about seventy-five thousand dollars ($75,000.00). That mortgage bonds have been issued upon said plant for the sum of fifty thousand dollars ($50,000.00), for borrowed money. The interest on said bonds has been paid heretofore by the defendant company direct to the mortgage bond holders."

## XIX.

"That in the month of June, 1901, the defendant company commenced expending money on said water plant, and trying to secure an additional and adequate supply of water, and expended some two thousand dollars ($2,000.00) in an effort to provide a greater supply of water, in accordance with the terms of its contract with the city of El Reno."

## XX.

"That the failure of the water supply of said water plant has been largely caused by the inadequate quantity of sheet water, being the original source of supply for said plant, caused by dry weather, which continued up to the commencement of this action. Said defendant's source of water supply of water was twenty-one wells in the valley of the North Canadian River about a half mile from said river, and about one-half mile from said city of El Reno, distributed over a tract of some five acres in extent, and so connected as to convey the water from each of said wells to one large central well from which the water was pumped in the principal mains of said company. Eleven of said wells were constructed prior to July, 1899, and in the fall of 1899, nine of said wells were constructed and connected with said plant. That said wells so constructed were sunk to a depth of about forty feet, and to bed rock in said locality, and the supply of water obtained therefrom is what is known as sheet water, and proved sufficient until about the 1st of May, 1901, when by reason of the dry weather as aforesaid, and the increased demand, said supply became deficient."

## XXI.

"That to overcome the difficulty and secure a greater supply of water, the defendant company purchased additional machinery sometime in June, 1901, and sunk wells in the bed of the North Canadian River. That about the middle of July, 1901, the water company conducted the water pumped from the wells at the North Canadian River to the pumping station, and the water supply was in a measure thereby increased."

Of the four conclusions of law, the court set aside the first three and rendered judgment upon the fourth. The fourth conclusion of law is as follows:

## IV.

"The water plant of the defendant having been mortgaged to secure the payment of the sum of fifty thousand dollars, ($50,000.00), and this action being for the cancellation and rescission of the ordinance giving the defendant the right to furnish water to said city, necessarily affects the company holding said mortgage bonds, and the mortgage company is a necessary and proper party to the action."

The record does not contain the evidence, but merely contains the pleadings, motions, findings of fact and conclusions of law, together with the judgment of the court. After setting aside the first three conclusions of law found by the referee, the court sustained the fourth conclusion, and rendered judgment thereon against the plaintiff, dismissing the action and taxing the costs to the plaintiff. From this judgment the plaintiff in error appeals.

The discussion in this case on both sides has covered a much wider range than is necessary to reach any question contained in the record. Several of the propositions discussed cannot be reached because of the failure to bring up

the evidence. The record not containing the evidence, this court is confined and restricted to questions arising upon the pleadings, findings of fact, and conclusions of law. Had the plaintiff in error preserved the evidence in the record, this court then could have examined all matters complained of. Upon this record we must take the findings of fact as verity, for the purpose of this case.

The water works contract contains a very peculiar provision in case of a failure of the water supply. That is to say, there is a provision which sets forth that the water company shall furnish an abundant supply of good, clear, bright and wholesome water. Then in section 15, there is a provision that if the grantee or his assigns, shall fail, except through unavoidable accident or fault of the town, or failure of the water supply, to furnish an adequate supply of water for fire and other public and private use, as provided in this ordinance, for a period of sixty days continuously, that the contract for hydrant rental between the town of El Reno and said grantee shall cease at the option of the town. Now, here was a contract the very purpose of which was to provide water for fire protection and for domestic use generally, and a failure to supply a sufficient quantity of water would be a failure in the very purpose and object of the contract, but there was a clause inserted, which would seem to provide that in case of a failure of the water supply that the city would still be bound to receive a partial supply and be unable to work a forfeiture of the contract or franchise. And it was, we suppose, upon this theory and viewing the contract in this light, that the statements were made in the answer admitting the partial failure to furnish water,

and attributing this failure to the failure in the supply. There is nothing in the contract between the parties which provides that the wells for the supply of water should be located at any particular place, although it is alleged that the city knew where the wells were to be sunk, and acquiesced in their location at that point. It devolved upon the water company to find a supply of water adequate for the purpose if it could be done within a reasonable distance from the city; the purpose of the contract being to furnish water sufficient for fire protection and other domestic use, the company could not be heard to say that inasmuch as it had sunk wells at a point where all of the parties believed that a sufficient supply of water could be found, that because they had failed to find a sufficient quantity, they could then refuse to make further efforts to find a body of water that would be sufficient. If there was a larger quantity of water at any place within a reasonable distance that could be had without an unreasonable expenditure, and the city was growing and needed a greater amount of water, it was the duty of the company, under their contract, to use all reasonable efforts to find a sufficient body of water for that purpose.

The first error complained of was the overruling of the motion of plaintiff in error for judgment on the pleadings. A decision upon this motion in favor of plaintiff would necessarily have been final as between the parties, and the question as to whether or not the mortgagees were necessary parties to the action must be determined before a decision could be had upon this motion. We think the conclusion of law found by the referee and sustained by the court was correct, that the mortgagees were necessary parties to

this suit before any final judgment could be rendered against the plaintiff therein, and being necessary parties, the court would have required them to be brought in before rendering any judgment against the defendant which would have disposed of the case. It is strenuously contended by the plaintiff in error that the mortgage company was not a necessary party, or even a proper party, in the case; that all of the rights of the parties in the case could be litigated without the mortgage company being made a party. We think the plaintiff in error is in error in this contention, and we are cited to no cases sustaining the proposition.

In the case of *Farmers L. & T. Co. v. Galesburg,* 133 U. S. 156, which was a case from Galesburg, Ill., and in which the contract had a provision similar to the one in the case at bar, making provision that the grantees might issue bonds secured by trust deed upon the works and appurtenances, and that in such case the money to become due from the hydrant rentals should be appropriated for the payment of interest on such bonds, the mortgage company made application to be made parties, to which there was no objection, and after the company was made a party defendant, it developed that it was the real owner of the water works, and the litigation was from that time carried on by such company. This is the only case that we have been able to find in which the mortgage company was made a party, and in this case, when the application was made, no objections seem to have been made by the opposition. This case is authority for the contention at least that the mortgage company was a proper party in this case, and we think that the language contained in section six of the franchise

ordinance is such that it is thereby made a party to the contract, and is interested in any litigation which seeks to annul the contract between the city and the water company.

The conclusion, therefore, reached by the referee and the court below that the mortgage company was a necessary party to the action was correct. Defendant in error concedes this proposition thus far. It is only combated by the plaintiff in error.

Section 4239, Wilson's Statutes, reads as follows:

"The court may determine any controversy between parties before it, when it can be done without prejudice to the rights of others, or by saving their rights; but when a determination of the controversy cannot be had without the presence of other parties, the court must order them to be brought in."

It was necessary to make the mortgage company a party to this litigation if for no other reason than to avoid a multiplicity of suits. Maxwell's Pleading and Practice, 43; *Camp v. McGillicuddy,* 10 Iowa 201; Pomeroy's Remedies, sections 196, 208, 418 and 430; *Gerson v. Hanson,* 9 Pac. 230.

The rule embodied in this statute is an equitable one, and derived from equitable practice. Usually in cases for the recovery of money only, the plaintiff may, at its option, prosecute the action as against any one or all of the obligors, but this is not true as a rule in equity cases; besides the purpose and design of the courts is not to try a case upon some technicality which puts no real question at issue, nor is it the purpose of courts to try a case upon such a narrow theory that it makes it necessary to commence a new suit;

but, on the contrary, the purpose and design of courts is to administer justice between the litigants, and in order to enforce their full rights and obligations upon the merits, it becomes necessary to bring in all parties interested.

Here in this case the town and the water company had provided in their contract that the water company might issue bonds secured by a mortgage or trust deed, and that the hydrant rentals should be set apart and held for the payment of interest upon such bonds. Now, if these hydrant rentals could be cut off by dissolution and annulment of the contract, and the value of the property so far depreciated as to make it practically worthless, without the mortgage company being heard, then the rights of such company would be affected and adjudicated without its having its day in court.

We pass now to the consideration of the findings of the referee.

First; it is found that the water was not at all times clear, bright and wholesome. Next; that it was at times inadequate for fire purposes, and insufficient for domestic use. Next; that the failure of the water supply of the plant was largely caused by the inadequate quantity of sheet water, being the original source of supply of the plant, caused by dry weather, which continued up to the commencement of this action. That defendant had expended money on said plant in trying to secure an additional supply of water, expending the sum of about two thousand dollars; and was ready and willing to expend an additional amount, and would have done so were it not for the commencement of this suit. The defendant, in order to overcome this diffi-

culty, and to secure an additional supply of water, had purchased machinery and sunk additional wells, which under ordinary circumstances would probably have been sufficient, but proved to be inadequate.

We think the findings of fact show that the water company had made a reasonable effort to find a supply of water adequate for the use of the city. It was no fault of the company that the water had decreased in volume because of the dry weather, which, by the findings of the referee, was shown to have continued up to the commencement of this action. There was no means by which the water company could control the water supply, and there is an express provision in the franchise ordinance that the company should not be held accountable for the failure to furnish sufficient water when that failure was caused by the failure of the water supply itself.

Having reached the conclusion that the findings of fact failed to show that the defendant company was at fault in not carrying out the provisions of its contract, the judgment of the court below is affirmed.

Irwin, J., who presided in the court below, not sitting; all the other Justices concurring.